## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COREY ALAN BENNETT, | : | Civil No. 3:21-cv-1578 |
| | : | |
| Plaintiff | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| DEPUTY WARDEN JEFF SCOTT, *et al.*, | : | |
| | : | |
| Defendants | : | |

### MEMORANDUM

Plaintiff Corey Alan Bennett ("Bennett"), an inmate confined at the Franklin County

Jail, in Chambersburg, Pennsylvania, commenced this action pursuant to 42 U.S.C. § 1983.

(Doc. 1).  Named as Defendants are Deputy Warden Jeff Scott, Deputy Warden Michelle

Weller, Warden William Bechtold, Correctional Officer French, Director of Treatment Jessica

Sterner, and Major David Smith.  Presently pending before the Court is Defendants' motion

(Doc. 26) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  The motion is

fully briefed and ripe for resolution.  For the reasons set forth below, the Court will deny

Defendants' motion.

### I.     Allegations of the Complaint

Bennett alleges that, in December 2020, Correctional Officer French informed him

that he was related to the victim in Bennett's criminal case.  (Doc. 1, p. 6).  Bennett

allegedly informed Defendant Scott of the potential relationship.  (*Id.*).  Bennett contends

that he fully exhausted this claim through the prison grievance system.  (*Id.* at pp. 6-7).

After he filed the grievance, Defendants Scott and Smith conducted an investigation and interviewed Bennett. (*Id.* at p. 7). Bennett asserts that Defendants Scott and Smith failed to take any action and allowed Defendant French to remain in contact with him. (*Id.*). Bennett alleges that Defendant Bechtold was aware of the situation. (*Id.*).

Bennett next alleges that Defendant French sexually assaulted and sexually harassed him in violation of the Prison Rape Elimination Act, physically assaulted him, and denied him meals. (*Id.*). Bennett allegedly informed Defendants Scott and Weller of these acts, but they failed to investigate the situation and allowed Defendant French to remain on Bennett's housing unit. (*Id.* at p. 8). He further alleges that Defendant Bechtold "refused to intervene." (*Id.*). As a result, Bennett contends that he suffers from depression and mental health issues. (*Id.*).

In August 2021, Bennett was moved to another housing unit and jail staff retaliated against him for filing a lawsuit. (*Id.* at p. 9). Bennett alleges that Defendant Sterner destroyed his grievances and obstructed his access to the prison grievance system. (*Id.*). Defendant Bechtold was allegedly apprised of the situation but failed to intervene. (*Id.*).

On August 12, 2021, Defendant Scott and another individual informed him that he would not be allowed postage from the Jail to mail legal documents to his attorney and to the courts. (*Id.*). He also alleges that Defendant Scott refused to provide photocopies of legal documents. (*Id.*). Bennett alleges that he missed several deadlines in his criminal case because he was not provided postage or envelopes. (*Id.* at p. 13). He attempted to

file a grievance related to this incident, but Defendant Sterner allegedly destroyed his

grievance. (*Id.* at p. 10).  On August 19, 2021, Defendants Scott and Weller purportedly

informed Bennett that they would not provide him with postage to mail his legal documents.

(*Id.*).  Bennett contends that he was only able to file the instant lawsuit because another

inmate provided him with the proper postage.  (*Id.* at p. 11).

## II.    Legal Standard

A complaint must be dismissed under Fed. R. Civ. P. 12(b)(6), if it does not allege

"enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  The plaintiff must

aver "factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct.

1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic

recitation of the elements of a cause of action will not do.'"  *DelRio-Mocci v. Connolly Prop.*

*Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555).  In other words,

"[f]actual allegations must be enough to raise a right to relief above the speculative level."

*Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013)

(internal citations and quotation marks omitted).  A court "take[s] as true all the factual

allegations in the Complaint and the reasonable inferences that can be drawn from those

facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v.*

*Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation

marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to
> determine the sufficiency of a complaint:  First, the court must take note of the
> elements a plaintiff must plead to state a claim.  Second, the court should
> identify allegations that, because they are no more than conclusions, are not
> entitled to the assumption of truth.  Finally, where there are well-pleaded
> factual allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged – but it has not show[n] – that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks

omitted).  This "plausibility" determination will be a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court

must permit a curative amendment unless such an amendment would be inequitable or

futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a
> defendant moves to dismiss it, unless the district court finds that amendment
> would be inequitable or futile, the court must inform the plaintiff that he or she
> has leave to amend the complaint within a set period of time.

*Id.*

4

## III.    Discussion

### A.    First Amendment Access to Courts Claim

In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's limited right of access to the courts.  Prisoners are not necessarily "capable of filing everything" but have a right of access to "attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Lewis v. Casey*, 518 U.S. 343, 355 (1996).  "The right of access to the courts must be adequate, effective and meaningful and must be freely exercisable without hindrance or fear of retaliation." *Milhouse v. Carlson*, 652 F.2d 371, 374 (3d Cir. 1981) (internal citations omitted).  Following *Lewis*, courts have consistently recognized that such claims require some proof of an actual, concrete injury, in the form of direct prejudice to the plaintiff in the pursuit of some legal claim. *See Oliver v. Fauver*, 118 F.3d 175 (3d Cir. 1997).  An inmate must demonstrate "(1) that they suffered an actual injury—that they lost a chance to pursue a non-frivolous or arguable underlying claim; and (2) that they have no other remedy that may be awarded as recompense for the lost claim other than in the present denial of access suit." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)) (internal quotations omitted).

"It is [also] indisputable that indigent inmates must be provided at state expense" with basic materials necessary to draft legal documents and with stamps to mail them. *Bounds*, 430 U.S. at 824.  However, this does not mean that prisoners have a constitutional

5

right to unlimited free postage or copying.  *See Montanez v. Sec'y Pa. Dep't of Corr.*, 773

F.3d 472, 476 (3d Cir. 2014) ("Inmates are . . . responsible for. . . the cost of access to legal

services"); *Reynolds v. Wagner*, 128 F.3d 166, 183 (3d Cir. 1997) (no First Amendment

right to subsidized mail); *Kershner v. Mazurkiewicz*, 670 F.2d 440, 444 (3d Cir. 1982)

("Pads, pens, pencils, and photocopy machines" are not constitutionally required under

*Bounds*).  "The constitutional concept of an inmate's right of access to the courts does not

require that prison officials provide inmates free or unlimited access to photocopying

machinery."  *Johnson v. Parke*, 642 F.2d 377, 380 (10th Cir. 1981).

Here, Bennett asserts that Defendants denied him access to the courts when the

Franklin County Jail enforced its indigent postage account policy.  (Doc. 1, p. 5).  Pursuant

to the Franklin County Jail policy, an indigent inmate is allowed $20.00 per month for free

postage, copies, and envelopes.  (Doc. 27-1).  Once the indigent inmate spends more than

the limit, the account is credited another $20.00 the following month.  On August 12, 2021,

Bennett overused his postage account and was informed of the overuse.  (*Id.*).  Despite his

overuse, he was allowed an additional $8.00 in September 2021.  (*Id.*).  Once his indigent

postage account was replenished, he was again allowed free postage.  (*Id.*).  As a result of

the Franklin County Jail mail policy, Bennett alleges that he missed several deadlines in his

criminal case because he was not provided postage or envelopes.  (Doc. 1, p. 13).

Accepting the allegations as true, Bennett has adequately alleged that he was prevented

from pursuing a nonfrivolous legal claim or defense, and that he actually missed deadlines

in his pending criminal case.  Consequently, the Court will deny Defendants' motion to dismiss the denial of access to courts claim.

### B.    Eighth Amendment Claims

Bennett asserts that he was assaulted by Defendant French in violation of the Eighth Amendment.  The Eighth Amendment protects prisoners from cruel and unusual punishment.  *See Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *see also* U.S. CONST. amend. VIII.  To prevail on an Eighth Amendment claim, an inmate must show: (1) a deprivation that is objectively sufficiently serious; and, (2) "a sufficiently culpable state of mind" of the defendant official.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

In an Eighth Amendment excessive force case, the inquiry "is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 7.  Not "every malevolent touch by a prison guard" violates the Constitution.  *Id.* at 9.  "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'"  *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).  To establish an Eighth Amendment excessive force claim, an inmate does not need to show that he suffered a significant, or even a more than *de minimis*, injury.  *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).  Rather, the central issue is the force used by the officer, not the resultant injury.  *Flood v. Schaefer*, 439 F. App'x 179, 182 (3d Cir. 2011).

7

Additionally, the United States Court of Appeals for the Third Circuit has recognized that sexual abuse of an inmate by a corrections officer may violate the Eighth Amendment. *Drumgo v. Kuschel*, 811 F. App'x 115, 118 (3d Cir. 2020) (citing *Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018)).  When analyzing a prison sexual abuse claim, as with other Eighth Amendment claims, there is both an objective and subjective prong.  *See Ricks*, 891 F.3d at 474.  With respect to the objective prong, a plaintiff must establish an objectively serious sexual contact.  *See id.* at 478.  "[A] pattern of harassment and sexualized touching may . . . clearly be considered objectively cruel and unusual" such that it violates the Eighth Amendment.  *Id.* at 477.  As to the subjective prong, the official must have acted with a culpable state of mind—either without a legitimate penological purpose or with malice for the purpose of causing harm.  *See id.* at 475.

Bennett alleges that Correctional Officer French informed him that he was related to the victim in Bennett's criminal case.  (Doc. 1, p. 6).  Bennett filed a grievance; however, staff took no action and continued to allow Defendant French to work on Bennett's housing unit.  (*Id.* at pp. 7-8).  He alleges that Defendant French then physical and sexually assaulted him and sexually harassed him.  (*Id.* at pp. 7-8, 14).  As a result, Bennett asserts that he suffers from depression and mental health issues.  (*Id.* at pp. 8-9).  In accepting as true all factual allegations set forth in the complaint, the Court concludes that Bennett has adequately stated an Eighth Amendment claim sufficient to withstand scrutiny on a Rule 12(b) motion.  The motion to dismiss these claims will be denied.

###### C.    Supervisory Claims against Defendants Bechtold, Smith, and Scott

Defendants Bechtold, Smith, and Scott argue that Bennett fails to state a claim against them because they cannot be held liable based on their supervisory roles.  (Doc. 27, p. 14).  Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior."  *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . .  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362 (1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003).  Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible.  *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08.  Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement.  *Rode*, 845 F.2d at 1208.

Bennett alleges that Defendants Bechtold, Smith, and Scott were aware of the alleged physical abuse, sexual abuse, sexual harassment, and destruction of grievances, but failed to intervene and failed to take any action to remedy the situation.  Construing the complaint liberally, these allegations are sufficient to establish the personal involvement of

9

Defendants Bechtold, Smith, and Scott.  The motion to dismiss will be denied with respect to these Defendants.

### D.     Exhaustion of Administrative Review

Defendants contend that Bennet failed to exhaust his grievances in the prison's administrative review process with respect to his claims of harassment, assault, or sexual assault.  (Doc. 27, pp. 4-5).  Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions.  *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 206 F.3d 289, 291 (3d Cir. 2000).  Section 1997e(a) establishes the requirement of administrative exhaustion:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The PLRA "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  It has been made clear that the exhaustion requirement is mandatory.  *See Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *see also Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d

Cir. 2000) (same).  "[I]t is beyond the power of [any] court . . . to excuse compliance with the

exhaustion requirement."  *Nyhuis*, 204 F.3d at 73 (quoting *Beeson v. Fishkill Corr. Facility*,

28 F. Supp.2d 884, 894-95 (S.D.N.Y. 1998)).

To exhaust administrative remedies an inmate must comply with all applicable

grievance procedures and rules.  *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004).  The

PLRA requires not only technical exhaustion of the administrative remedies, but also

substantial compliance with procedural requirements.  *Spruill*, 372 F.3d at 227-32; *see also*

*Nyhuis*, 204 F.3d at 77-78.  A procedural default by the prisoner, either through late or

improper filings, bars the prisoner from bringing a claim in federal court unless equitable

considerations warrant review of the claim.  *Spruill*, 372 F.3d at 227-32; *see also Camp v.*

*Brennan*, 219 F.3d 279 (3d Cir. 2000).

This broad rule favoring full exhaustion allows for a narrowly defined exception; if the

actions of prison officials directly caused the inmate's procedural default as to a grievance,

the inmate will not be required to strictly comply with this exhaustion requirement.  *See*

*Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000).  However, courts also recognize a clear

"reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the

statute requires."  *Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2002).  Thus, an inmate's

failure to exhaust will be excused only "under certain limited circumstances." *Harris v.*

*Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005).  In *Ross v. Blake*, the Supreme Court

outlined the three instances in which remedies would not be "available" such that

exhaustion may be excused: (1) when an administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative remedies are so unclear that "no ordinary prisoner can make sense of what it demands"; and, (3) where prison officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 643-44 (2016); *see also Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018). The Third Circuit Court of Appeals has held that "a prisoner exhausts his administrative remedies as soon as the prison fails to respond to a properly submitted grievance in a timely fashion." *Shifflett v. Korszniak*, 934 F.3d 356, 359 (3d Cir. 2019).

Here, Bennett contends that Defendant Sterner destroyed his grievances and obstructed his access to the prison grievance system. Bennett's allegations raise a fact issue of whether his ability to access the grievance process was thwarted by Franklin County Jail personnel. Defendants' motion to dismiss based on failure to exhaust administrative remedies will be denied.

### E. Qualified Immunity

Defendants invoke the defense of qualified immunity in their motion to dismiss. (Doc. 27, pp. 8-10). "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson*

*v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." *Sharp*, 669 F.3d at 159 (citing *Pearson*, 555 U.S. at 244). Although qualified immunity is generally a question of law that should be considered at the earliest possible stage of proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity. *Giles v. Kearney*, 571 F.3d 318, 325-26 (3d Cir. 2009).

A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two *Saucier* prongs should be addressed first).

The Court will deny the motion to dismiss without prejudice to the individual Defendants' right to reassert the qualified immunity defense in a motion for summary judgment based on a more fully developed record. *See Leveto v. Lapina*, 258 F.3d 156,

161 (3d Cir. 2001) ("qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint") (citations and internal quotation marks omitted).

## III.   Conclusion

For the reasons set forth above, the Court will deny Defendants' motion (Doc. 26) to dismiss.  A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: May _____, 2022

14